USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/8/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                   :
HANS GEORGE ALEXANDER,               :
                            Plaintiff,    :
                                                        :        17 Civ. 3170 (LGS)
                 -against-                      :
                                                        :        **OPINION AND ORDER**
CITY OF NEW YORK, *et al.*,                  :
                            Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Pro se Plaintiff Hans George Alexander brings this action under 42 U.S.C. § 1983 and New York law against Defendants the City of New York ("City"), the New York City Police Department ("NYPD"), Defendant Sargent Ferrara and Defendant Officers McCloud, Henriquez and Nesto ("Individual Defendants"). Defendants move for summary judgment on all claims under Federal Rule of Civil Procedure 56. Plaintiff did not oppose the motion.[1] For the following reasons, summary judgment is granted in part for Defendants, and *sua sponte* granted in part for Plaintiff.

## I. BACKGROUND

      The facts below are drawn from the record and are undisputed. Plaintiff's claims arise from events on the evening of September 2, 2016, in the general vicinity of Plaintiff's residence in the Bronx. Around 8:00 p.m. that evening, Plaintiff purchased $60 worth of marijuana and crack cocaine. Plaintiff returned to his residence, and then left again around 9:40 p.m. to buy cigarettes and candy at a local corner store. Plaintiff still had the crack cocaine he had purchased in the pocket of his sweatpants. At the corner store, Plaintiff spoke with an acquaintance known

---

[1] In a November 1, 2019, letter filed on ECF, the Court was notified by a non-party that Plaintiff passed away on August 15, 2019.

as "E," who reminded Plaintiff that he owed him two dollars. Plaintiff then returned home, retrieved the two dollars and arrived outside of "E's" residence on Union Avenue at approximately 9:48 p.m.

After "E" verbally confirmed that he was coming down to meet Plaintiff, Plaintiff waited outside the gate at the entrance to the building, and draped his hand -- holding the two dollars -- over the top of the gate. As he waited, Plaintiff accidentally dropped the two dollars over the gate, and the money landed on the other side. "Immediately," Plaintiff turned around and saw Defendant Officers McCloud, Henriquez and Nesto and Defendant Sergeant Ferrara get out of a marked police van that was approximately seven or eight feet from where Plaintiff stood. McCloud and Henriquez asked Plaintiff, "What did you throw over the gate?" Plaintiff responded, "I dropped two dollars."

As Plaintiff was questioned, Nesto and Ferrara pulled out flashlights and began to search the area. Because the gate was locked, Nesto and Ferrara could not immediately get inside. After three or four minutes, someone exited the building and Nesto and Ferrara were able to enter and retrieve Plaintiff's two dollars. Plaintiff asked Nesto and Ferrara to return his money.

As Nesto and Ferrara were looking for the two dollars, McCloud and Henriquez continued to question Plaintiff. McCloud and Henriquez asked Plaintiff for identification and "about guns in the neighborhood." Plaintiff explained that he did not have identification because he lived across the street and had gone out for an errand. Beginning before, and then continuing after Nesto and Ferrara found Plaintiff's two dollars, McCloud "simultaneous[ly]" began patting down the outside of Plaintiff's clothing and continued to ask for identification. McCloud and Henriquez also looked in Plaintiff's hands and poured out the contents of a bag Plaintiff was carrying from the corner store.

McCloud then asked Plaintiff what was in his pockets. Plaintiff removed his keys from his pocket. McCloud then drew his flashlight and continued the pat-down. McCloud asked if he could search Plaintiff's pockets, to which Plaintiff responded "no." McCloud then began "squeezing" Plaintiff's pockets and "put [his flashlight] in [Plaintiff's] pocket and put his hand in [Plaintiff's] pocket and pulled it up." This is when McCloud found three crack cocaine rocks in Plaintiff's pocket, each the size of "a small popcorn," and some powder.

McCloud handcuffed and arrested Plaintiff for possession of narcotics. Plaintiff told the Individual Defendants that "they [were] making a grave mistake." The Individual Defendants told Plaintiff that "they could charge [him] with littering." Plaintiff was transported to the NYPD's 40th Precinct station house and charged with Criminal Possession of a Controlled Substance in the 7th Degree, pursuant to New York Penal Law § 220.03.

On December 8, 2018, Plaintiff received an Adjournment in Contemplation of Dismissal pursuant to New York Criminal Procedure Law § 170.55. On June 7, 2018, Plaintiff's criminal case was dismissed and sealed.

Defendants moved for summary judgment and filed a Rule 56.1 Statement of Undisputed Facts that relies entirely on Plaintiff's deposition for an account of the events the night of Plaintiff's arrest. Plaintiff did not oppose the motion. Pursuant to Federal Rule of Civil Procedure 56(f), the Court ordered Defendant to show cause why partial summary judgement should not be entered for pro se Plaintiff on (1) the unlawful detention claim for the period between when the Individual Defendants found Plaintiff's two dollars -- and Plaintiff asked for it back -- and when the crack cocaine was found in Plaintiff's pocket, because of a lack of probable cause and no qualified immunity, and (2) the unlawful search claim for Defendant McCloud's search of Plaintiff's pocket because it was not incident to a lawful arrest. Defendants filed a

letter response with legal argument, but did not file any affidavits from the Individual Defendants or other evidentiary material.

## II. LEGAL PRINCIPLES

### A. Summary Judgment

Summary judgment is appropriate if the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original). The evidence is construed in the light most favorable to, and all reasonable inferences are drawn in favor of, the nonmoving party. *Id.* at 113. Summary judgement is improper if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn. *Id.* at 123.

### B. Pro se Pleadings and Unopposed Motions

Although the same standards apply, special latitude is given to a pro se litigant in responding to a summary judgment motion. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-58 (2d Cir. 2017). "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018). In particular, pro se litigants must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *McPherson v. Coombe*, 174 F.3d 276, 280-81 (2d Cir. 1999); *accord Elastic Wonder, Inc. v.*

*Posey*, 179 F. Supp. 3d 307, 310 (S.D.N.Y. 2016). Defendants provided Plaintiff with such notice on April 12, 2019.

Plaintiff's lack of response to the motion, and specifically Defendants' Rule 56.1 statement, is ordinarily construed as a concession as to the Individual Defendants' version of the facts under Local Rule 56.1. However, Defendants' Rule 56.1 statement is based on Plaintiff's recounting of the facts, so there is no alternative version of the facts for Plaintiff to concede. In any event, given Plaintiff's pro se status, his failure to respond to the Rule 56.1 statement is excused. *See, e.g.*, *Roland v. Ponte*, No. 17 Civ. 2758, 2018 WL 4609109, at *1 n.1 (S.D.N.Y. Sept. 25, 2018). Even when a motion for summary judgment is unopposed, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Wilson v. Air Serv Corp.*, 705 F. App'x 43, 44 (2d Cir. 2017) (summary order) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)). A district court may not grant an unopposed motion "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Gachette v. Metro N.-High Bridge*, 598 F. App'x 803, 804 (2d Cir. 2015) (summary order) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). "[I]n determining whether the moving party has met this burden . . . the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.* (alteration in original) (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 244).

### III. DISCUSSION

Plaintiff's pleadings are construed to assert claims under § 1983 for unlawful stop and search, false arrest, false imprisonment and malicious prosecution; similar claims under New

York civil rights law; and a federal municipality claim, all based on the events that occurred the evening of September 2, 2016.

To succeed on a claim under § 1983, a plaintiff must establish (1) that the defendant was a state actor (i.e., acting under color of state law) when he committed the violation, and (2) that the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). A plaintiff must also establish the personal involvement of each defendant in the alleged constitutional violation. *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

Because Defendants' Rule 56.1 Statement relies on Plaintiff's deposition for the facts of what transpired the evening of Plaintiff's arrest, there are no facts in dispute, and summary judgment is consequently appropriate on all claims. As explained below, summary judgment is granted to all Defendants on all claims, except summary judgment is granted *sua sponte* to Plaintiff (1) against the Individual Defendants on the unlawful detention claim for the period between when the Individual Defendants found Plaintiff's two dollars -- and Plaintiff asked for it back -- and when the crack cocaine was found in Plaintiff's pocket, and (2) against Defendant McCloud on the unlawful search claim for his search of Plaintiff's pocket.

### A. Unlawful Stop, Detention and Search

Plaintiff's detention and search occurred in three legally distinct time periods. First, was the *Terry* stop and pat-down, which were lawful and for which the Individual Defendants are granted summary judgment. Second, was Plaintiff's continued detention and search -- after the Individual Defendants retrieved Plaintiff's money and before they found the crack cocaine in his pocket -- which were unlawful and for which Plaintiff is granted summary judgment. Third, was

Plaintiff's arrest after the crack cocaine was founded in his pocket, which arrest was lawful and for which the Individual Defendants are granted summary judgment.

   **1. *Terry* Stop and Pat-Down**

The *Terry* stop and pat-down of Plaintiff were lawful. The Fourth Amendment guarantees a right to be free from unreasonable searches and seizures. *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016). An officer may conduct a brief investigatory detention ("*Terry* stop"), provided "the officer has *reasonable suspicion* that the person to be detained is committing or has committed a criminal offense." *United States v. Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018); *see Terry v. Ohio*, 392 U.S. 1, 23 (1968). The reasonable suspicion standard is "less demanding than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity *may* be afoot." *United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018). As part of a *Terry* stop, an officer may conduct a pat-down frisk consisting of a "carefully limited search of the outer clothing . . . in an attempt to discover weapons." *United States v. Lopez*, 321 F. App'x 65, 66 (2d Cir. 2009) (summary order) (quoting *Terry*, 392 U.S. at 30); *accord United States v. McDow*, 206 F. Supp. 3d 829, 850 (S.D.N.Y. 2016). In order for a pat-down to accompany a *Terry* stop, there must be a reasonable basis to think "'that the person subjected to the frisk is armed and dangerous.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)).

The Individual Defendants had reasonable suspicion to conduct a *Terry* stop because they saw Plaintiff drop something over the gate from approximately seven or eight feet away, and may reasonably have believed that he dropped contraband, such as drugs, on the other side to avoid being caught with them by the police who were in close proximity. *See United States v. Torres*, 252 F. Supp. 3d 229, 233 (S.D.N.Y. 2017) (concluding that officers had reasonable

7

suspicion to stop defendant, in part, after defendant was stopped in a high crime area). The Individual Defendants similarly had a reasonable basis to think that Plaintiff was armed and dangerous if he was in possession of illegal drugs, particularly a quantity for resale which they would not have been able to ascertain from a distance. *See Santillan*, 902 F.3d at 59 (concluding that the arresting officer had reasonable suspicion that defendant was armed and dangerous after observing "several indicators of possible narcotics activity" and because "[n]arcotics activity and weapons often go hand in hand"). The Individual Defendants are entitled to summary judgment on the federal and state claims based on the stop and pat-down. *See Ferguson v. City of New York,* No. 17 Civ. 4090, 2018 WL 3626427, at *4 (E.D.N.Y. July 30, 2018) (concluding -- because reasonable suspicion "under New York law is co-extensive with the federal reasonable suspicion standard" -- that plaintiff's seizure was unlawful under New York law, in part, because it was already determined that the arresting officer lacked reasonable suspicion under federal law).

### 2. Continued Detention and Search After Plaintiff's Money Was Found

#### a. Plaintiff's Continued Detention

The Individual Defendants' continued detention of Plaintiff after they found his money was unlawful because they no longer had reasonable suspicion to detain him. While the Fourth Amendment places "no rigid time limitation on *Terry* stops," *United States v. Sharpe*, 470 U.S. 675, 685 (1985), "the detention can continue only for the period of time necessary to either verify or dispel the suspicion." *Compton*, 830 F.3d at 64. The burden is on the Government "'to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" *Fiseku*, 915 F.3d at 870 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). After the

Individual Defendants found Plaintiff's money, they no longer had any basis to suspect that he had disposed of contraband.  To the contrary, their discovery confirmed his statement to them that he had dropped money over the gate.

Defendants argue that, even after Plaintiff's money was found, they reasonably detained him -- and are therefore protected by the doctrine of qualified immunity -- because they had at least "arguable probable cause" to arrest him for littering in violation of New York City Administrative Code § 16-118 (1)(a).  "Qualified immunity establishes a defense for a government actor acting in his official capacity." *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017).  Arresting officers are entitled to qualified immunity if they had "arguable probable cause" for the arrest.  *Id*.  Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met" or "[p]ut another way . . . [if] no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (internal quotation marks omitted).  When there is no dispute as to the "material historical facts," the question of qualified immunity -- i.e., the objective reasonableness of the officer's conduct -- is a question of law for the court. *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018).

New York City Administrative Code § 16-118 (1)(a) states: "No person shall litter, sweep, throw or cast . . . any ashes, garbage, paper, dust or other rubbish or refuse of any kind whatsoever, in or upon any street or public place, vacant lot, air shaft, areaway, backyard court, park or alley."  After the Individual Defendants had confirmed Plaintiff's story that he

accidentally dropped money over the gate and Plaintiff asked for it back, no officer of reasonable

competence could have concluded that he had violated the ordinance.

First, they could not have concluded that he "litter[ed], swe[pt], thr[ew] or cast" the

money within the meaning of Section 16-118 (1)(a), as the statute implies a violation from

discarding something -- not accidentally dropping it and then seeking to retrieve it. *See, e.g.,

Sands v. City of New York*, No. 04 Civ. 5275, 2006 WL 2850613, at *5 (E.D.N.Y. Oct. 3, 2006)

(finding that defendant officers had probable cause to arrest plaintiff under a previously enacted

version of the littering ordinance, where plaintiff tore up a traffic ticket and threw the pieces on

the ground). In their memorandum, Defendants repeatedly state that, after dropping the two

dollars, Plaintiff then "turned around as if to walk away." But the evidence does not support that

Plaintiff attempted or began to walk away, or that he otherwise intended to abandon the money

he had dropped. Instead, the record shows that he was detained and, after the Individual

Defendants had retrieved his money, Plaintiff requested that they return it.

Second, no reasonable officer could have concluded that the money was "ashes, garbage,

paper, dust or other rubbish or refuse" within the meaning of the statute. *See Harris v. City of

New York,* No. 15 Civ. 8456, 2017 WL 6501912, at *6 (S.D.N.Y. Dec. 15, 2017) (declining to

decide on summary judgment whether a jacket was within the littering statute and noting that

"[c]learly, a jacket is not ashes, paper, or dust. . . . [but] could, however, be 'garbage,' 'rubbish,'

or 'refuse'" if it were discarded as something unwanted). Money is a thing of intrinsic value,

and Plaintiff evidenced no intention of discarding it. In cases where courts have found probable

cause for violating Section 16-118 (1)(a), the discarded items were objects of little or no value.

*See Peterec v. City of New York*, No. 14 Civ. 309, 2015 WL 1027367, at *4 (S.D.N.Y. Mar. 6,

2015) (finding probable cause for a Section 16-118 (1)(a) violation, where plaintiff dropped

10

*some garbage* from a bag) (emphasis added); *United States v. Davis*, 111 F. Supp. 3d 323, 333-34 (E.D.N.Y. 2015) (finding probable cause for a Section 16-118 (1)(a) violation, where defendant officers observed plaintiff drop a *beer bottle* on a sidewalk) (emphasis added). Because the Individual Defendants did not have probable cause or even arguable probable cause to detain Plaintiff after his money was found, they are not entitled to qualified immunity and summary judgment is granted to Plaintiff for that detention.

### b. Search of Plaintiff's Pocket

Because the Individual Defendants did not have probable cause or arguable probable cause to arrest Plaintiff after his money was found, summary judgment is granted *sua sponte* to Plaintiff against Defendant McCloud as to his search of Plaintiff's pocket, which occurred during his unlawful detention.

The Fourth Amendment protects against unreasonable searches and seizures. *Fiseku*, 915 F.3d at 870. While a search typically requires a warrant to be reasonable, the search incident to arrest doctrine is an exception to the warrant requirement of the Fourth Amendment. *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017). As the lawful arrest itself establishes the legality of the search, an unlawful search claim turns on the existence of probable cause. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *accord Corley v. Vance*, 365 F. Supp. 3d 407, 443 (S.D.N.Y. 2019). A search incident to arrest may take place before the arrest itself occurs. *Diaz*, 854 F.3d at 205.

As discussed at length above, after Plaintiff's money was found, the Individual Defendants did not have any basis to continue to detain Plaintiff, much less arrest him. Therefore the search of Plaintiff's pocket while he was unlawfully detained was also unlawful because the search was not incident to a valid arrest. *See United States v. Babwah*, 972 F.2d 30,

33-34 (2d Cir. 1992) (concluding that a search of defendant's residence -- and evidence seized during the search -- was done so unlawfully, where defendant was unlawfully detained before he consented to the search); *see also McDow*, 206 F. Supp. 3d at 856 (concluding that -- after officers detained, questioned and searched defendant's pockets without finding evidence of the suspected crime -- defendant was unlawfully detained, rendering a further search and continued detention in a lobby also unlawful).

Similarly, the search of Plaintiff's pocket is not protected by the doctrine of qualified immunity because no reasonable officer would have believed that the search was incident to a lawful arrest. If Defendants had established arguable probable cause for detaining Plaintiff after the money was found, the ensuing search also might have been protected by qualified immunity. *See, e.g., Mastromonaco v. Cty. of Westchester*, No. 15 Civ. 10166, 2018 WL 4042111, at *5-6 (S.D.N.Y. Aug. 23, 2018); *Baksh v City of New York*, No. 15 Civ. 7065, 2018 WL 1701940, at *6 n.5 (E.D.N.Y. Mar. 31, 2018). But as discussed above, the Individual Defendants had no objectively reasonable basis to detain Plaintiff after the money was found, and therefore had no basis to search him during that detention.

Summary judgment is granted to Plaintiff on the unlawful search claims under federal and New York law. *See Carlos Quiles & Carlos Rodriguez v. City of New York*, No. 15 Civ. 1055, 2016 WL 6084078, at *4, 14 (S.D.N.Y. Oct. 12, 2016) ("The analysis for determining whether an official is entitled to qualified immunity for claims under New York law is substantially similar to that which is applied when defendants are faced with federal claims.").

### 3. Plaintiff's Arrest After the Discovery of Narcotics

Summary judgment is granted to the Individual Defendants on Plaintiff's claims for false arrest and false imprisonment after they discovered the crack in Plaintiff's pocket, because the discovery provided them with probable cause to arrest.

A § 1983 claim for false arrest is based on the Fourth Amendment. *Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019). The analysis that applies to § 1983 false arrest claims also applies to false imprisonment claims. *Jean v. City of New York*, 512 F. App'x 30, 31 (2d Cir. 2013) (summary order); *accord Barnes v. City of New York*, 338 F. Supp. 3d 317, 322 (S.D.N.Y. 2018). When analyzing § 1983 false arrest claims, "we have generally looked to the law of the state in which the arrest occurred." *Dancy*, 843 F.3d at 107. "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015). "Under New York law, a false arrest claim requires a plaintiff to show that the defendant intentionally confined him without his consent and without justification." *Dancy*, 843 F.3d at 107 (internal quotation marks omitted). Probable cause is an absolute defense to a false arrest claim. *Dufort*, 874 F.3d at 347.

There is no dispute that Defendant McCloud discovered crack cocaine in Plaintiff's pocket in the course of his search. This fact alone provides probable cause for Plaintiff's arrest. That the search resulting in the discovery was unlawful does not change the result because the "fruit of the poisonous tree" doctrine does not apply to § 1983 claims. *See Jenkins v. City of New York*, 478 F.3d 76, 91 n.16 (2d Cir. 2007); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999); *Marchand v. Hartman*, 395 F. Supp. 3d 202, 217 (D. Conn. 2019). Summary judgment is granted to the Individual Defendants on Plaintiff's false arrest and false imprisonment claims under federal and New York law. *See Jenkins*, 478 F.3d at 88 ("[U]nder

both New York and federal law, summary judgment dismissing a plaintiff's false arrest [and false imprisonment] claim[s] is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.").

### B. Malicious Prosecution

Summary judgment is granted to the Individual Defendants on Plaintiff's malicious prosecution claim because there was sufficient probable cause underlying his criminal prosecution.

A § 1983 claim for malicious prosecution arises from liberty and privacy interests under the Fourth Amendment. *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018). Under New York law, malicious prosecution requires: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *accord Bennett v. Vidal*, 267 F. Supp. 3d 487, 496 (S.D.N.Y. 2017). A § 1983 malicious prosecution claim requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *accord Bennett*, 267 F. Supp. 3d at 497. Probable cause is a complete defense to a claim of malicious prosecution in New York. *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019).

There is no dispute that Defendant McCloud discovered crack cocaine in Plaintiff's pocket. This discovery provides the requisite probable cause for Plaintiff's criminal prosecution, defeating any malicious prosecution claim by Plaintiff against the Individual Defendants under state or federal law. Summary judgment is granted on the federal and state malicious

prosecution claims. *See Smith v. Ware*, No. 17 Civ. 5152, 2019 WL 2616194, at *5 (S.D.N.Y. June 26, 2019 (dismissing plaintiff's federal and state malicious prosecution claims where the probable cause underlying his arrest also resolved his malicious prosecution claims).

### C. Municipal Liability

Summary judgment is granted to Defendant NYPD because it is not a suable entity. Pursuant to the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396; *see also Johnson v. N.Y.C. Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) (summary order); *Braun v. City of New York*, 284 F. Supp. 3d 572, 574 n.1 (S.D.N.Y. 2018). A claim against the NYPD is properly brought against the City.

Summary judgment is granted to the City on the municipal liability claim. To bring a § 1983 claim for municipal liability, "a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978). A municipality may be held liable "if the plaintiff's injury was caused by 'action pursuant to official municipal policy.' 'Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (internal citations omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011)).

The record contains no evidence that the City had a policy to detain and search people after the reasonable suspicion preceding a *Terry* stop has failed to ripen into probable cause. Accordingly, summary judgment is granted on Plaintiff's municipal liability claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement is GRANTED in part and DENIED in part. Summary judgment is granted to all Defendants on all claims, except summary judgment is granted *sua sponte* to Plaintiff (1) against the Individual Defendants on the unlawful detention claim for the period between when the Individual Defendants found Plaintiff's two dollars and when the crack cocaine was found in Plaintiff's pocket, and (2) against Defendant McCloud on the unlawful search claim for his search of Plaintiff's pocket during the unlawful detention.

The Clerk of Court is respectfully directed to close the motion at Docket Number 78 and to mail a copy of this Opinion and Order to pro se Plaintiff's daughter.

Dated: November 8, 2019
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**